UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

AARON E. ISBY,                                    )
       *Petitioner*,                          )
                                          )
    *vs.*                                       )          2:11-cv-00326-JMS-DKL
                                             )
DICK BROWN,                                       )
       *Respondent.*                         )

## ENTRY DISCUSSING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Aaron Isby's Petition for Writ of Habeas Corpus challenges the state court's amendment of a 1992 sentence to specify that it was to run consecutively with a prior sentence as required by Indiana law. For the reasons explained in this Entry, Isby's habeas petition must be denied. In addition, the Court finds that a certificate of appealability should not issue.

## I.
### BACKGROUND

Isby's Petition comes with a complicated procedural history, which the Court must untangle in order to resolve the issues before it.[1]

### A. Underlying Facts

The following underlying facts were set forth by the Indiana Court of Appeals, and are presumed to be correct because they have not been rebutted by Isby by clear and convincing evidence, 28 U.S.C. § 2254(e)(1):

> [O]n October 12, 1990, Isby was incarcerated at the Indiana Reformatory in Pendleton, Indiana. On that day, when prison counselor David Miller walked through the segregation unit, Isby reached through the bars of his cell and grabbed Miller's helmet chinstrap. Isby then spit on Miller and struck him. Miller sustained a sore neck and a bruise under his eyelid as a result of the attack.

---

[1] The Court is aware that Isby filed a Petition for Writ of Mandamus with the Seventh Circuit Court of Appeals on August 28, 2013 – the day before this Entry was docketed. At that time, the Court was in the final stages of drafting this Entry.

1

Following this incident, correctional officials decided to transfer Isby to a more secure cell.  At approximately 11:30 a.m., officer Michael Wasson told Isby he was going to be moved.  Isby refused to cooperate and Wasson told him that a "cell extraction team" would be contacted.

At approximately 1:10 p.m., an extraction team arrived at Isby's cell.  The team comprised of five specially-trained officers who remove resistant inmates from their cells.  Each officer wore a helmet, stab-proof vest, and other protective equipment.  None of the officers were armed.  The team was accompanied by a nurse, an officer carrying a videocassette recorder, and officer Douglas Darby and his dog.  Officer David Abel asked Isby on two occasions to move back to the bars and allow himself to be handcuffed.  Isby refused and his cell door was then opened.  When Darby and his dog entered the cell, Isby lunged forward and stabbed Darby and his dog with a nine-inch shank.  Officer William Layne then entered the cell to rescue Darby.  Isby then lunged at Layne with "a slashing and stabbing attack."…

Darby and Layne were both injured in the attack.  Darby sustained a stab wound to his throat which required five days of hospitalization and two surgeries.  Expert testimony revealed that Darby's throat wound would have been life-threatening had it been one centimeter lower.  Layne was stabbed fifteen or sixteen times, but none of the blows penetrated his protective vest.  One blow did, however, cut his forehead.

At approximately 1:15 p.m., officer Robert Armstrong arrived at Isby's cell with a fire hose.  After Isby refused to drop his weapon, Armstrong began spraying Isby with water.  The force of the water pushed Isby to the back of his cell.  While holding a mattress and shank, Isby overcame the force of the water and made his way to the front of the cell.  Isby was then sprayed with tear gas, causing him to drop the weapon.  Isby was then handcuffed.  The next day, Isby made the following statement to one of the prison sergeants:  "You f_ _ _ _ _s think you're safe but I'm going to get another one of you mother f_ _ _ _ _s."…

Isby was subsequently charged with the attempted murders of Darby and Layne, and battery on Miller.  At the conclusion of a jury trial on July 21, 1992, Isby was found guilty as charged.

[Dkt. 19-24 at 3-5.]

As is evident from the foregoing facts, Isby was serving a sentence for a prior conviction at the time the above described crimes were committed.  This is a significant circumstance because at the time Indiana Code § 35-50-1-2(d) provided:

> If, after being arrested for one (1) crime, a person commits another crime:
>
> > (1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime;
>
> > \*          \*                \*
>
> the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

The trial judge addressed this legal requirement during Isby's sentencing hearing, without objection, but did not specifically reference it in the first Abstract of Judgment ("First Abstract") that was issued following sentencing. Isby was sentenced to 40 years on Count I; 30 years on Count II, and 1 year on Count III. [Dkt. 1-7 at 1.]

### B.  The First Set of Appeals and the First Habeas Petition

Isby directly appealed his conviction to the Indiana Court of Appeals, arguing that: (1) the jury was improperly instructed as to the offense of attempted murder; (2) the trial court improperly refused his tendered instruction on self-defense; and (3) the trial court erred in permitting the jury to hear evidence of prior bad acts that he allegedly committed. [*Id.* at 5.] The Indiana Court of Appeals affirmed the conviction and sentence on April 6, 1995. [*Id.* at 2-9.]

On February 15, 1996, Isby filed a *pro se* petition for post-conviction relief. [Dkt. 19-1 at 9.] On July 7, 1999, he amended his petition for post-conviction relief by counsel, and the state court held a hearing on the petition on December 10, 2001. [*Id.* at 10.] The state court ordered that his Count III charge be changed from a Class A Misdemeanor to a Class B Misdemeanor, and that his sentence on that count be reduced from one year to six months. [*Id.*] The state court also, however, rejected Isby's argument that "he was somehow harmed because the trial judge sent final instructions to the jury room that contained strike-overs, additions and modification and were not re-typed." [*Id.* at 11.] The state court found that Isby had waived that issue

because he did not raise it on direct appeal, and denied relief from the post-conviction petition on January 28, 2002.  [*Id.*]

Isby appealed the denial of post-conviction relief to the Indiana Court of Appeals, which affirmed the state court's decision on September 6, 2002.  [Dkts. 19-19 at 3-4; 19-20; 19-21.] On November 7, 2002, the Indiana Supreme Court denied Isby's petition to transfer.  [Dkt. 19-19 at 4.]

Isby then filed a Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Indiana, 1:03-cv-1368-JDT-WTL, on September 19, 2003, challenging his convictions and sentences ("the First Petition").  [Dkt. 19-22.]  In the First Petition, Isby raised only one issue:

> Whether Petitioner was denied his fundamental right to a fair trial in violation of Amendment XIV to the U.S. Constitution and Art. I, §§ 12, 13 and 19 of the Indiana Constitution and Ind. Code § 35-37-2-2(6), for the trial court to give a copy of the final instructions to the jury after deliberation commenced, which contained extraneous information and materials.

[*Id.* at 4-5.]

On April 26, 2004, the United States District Court for the Southern District of Indiana denied Isby's First Petition, finding that he had procedurally defaulted with respect to the issue raised because he did not object to it at trial and did not include it in his direct appeal.  [Dkt. 19-23 at 4.]

## C.  The Second Abstract

In March 2009, as Isby's prior sentences were near completion, the Indiana Department of Correction ("DOC") requested that Judge Fredrick Spencer, the state court judge who had presided over Isby's trial, review Isby's sentence and "provide us with some direction" regarding "whether the 40.5 year sentence should be run concurrently or consecutively with the previous

4

sentences issued in Allen and Grant counties." [Dkt. 1-2 at 1.] As noted, the First Abstract was silent on the issue of consecutive versus concurrent sentences, [dkt. 1-7], but Judge Spencer did orally advise Isby during his sentencing hearing that Indiana law required him to impose the sentence consecutively, rather than concurrently, to the sentences he was serving at the time of the crimes for which Judge Spencer was sentencing him. [*See* dkt. 19-4 at 3-4 ("I'm required to link your sentence consecutive. I don't think it's discretionary when you, when you commit an offense in the Department of Correction it has to be a consecutive sentence").]

In April 2009, in an apparent response to the DOC's request and consistent with his statement during Isby's sentencing, Judge Spencer issued a Second Amended Abstract of Judgment ("Second Abstract") which provided for a sentence of 40 years on Count I; 40 years on Count II, and 6 months on Count III. [Dkt. 1-4 at 1.] The original sentence for Count II had been 30 years. [Dkt. 1-7 at 1.] The Second Abstract also specified that: "THE SENTENCE IS TO BE SERVED CONSECUTIVE TO ANY SENTENCE THE DEFENDANT WAS SERVING AT THE DATE OF THE OFFENSE." [Dkt. 1-4 at 1.]

In May 2009, Isby filed a Motion for Relief from Judgment relating to the Second Abstract, which the state court denied on July 22, 2009. [Dkt. 1-1 at 10.]

### D. The Second Set of Appeals and Second Petition for Writ of Habeas Corpus

In October 2009, Isby appealed the state court's denial of the Motion for Relief from Judgment relating to the Second Abstract, arguing that: (1) the trial court did not have jurisdiction to impose additional consecutive sentences "almost two decades after imposition of the original sentence," and violated his due process rights by doing so; (2) the trial court's unlawful increase of his sentence "after service begun," violated the double jeopardy clause; and

(3) the trial court's imposition of consecutive sentences in April 2009 violated his right to equal protection. [Dkt. 19-6 at 6.]

Subsequently, the Indiana Court of Appeals issued an Order stating that it could not discern whether Isby had already raised the issues in his first round of post-conviction relief from 1995 to 2002. [Dkt. 19-7 at 2.] It ordered Isby to identify the judgment or order he was appealing and to clarify the nature of the current appeal so that it could determine whether it was an impermissible successive petition. [*Id.* at 3.]

Isby responded to the Indiana Court of Appeals Order, stating that he was seeking post-conviction relief from the trial court's July 22, 2009 order denying his Trial Rule 60 Motion for Relief from Judgment. [Dkt. 19-8.] Specifically, Isby asserted that the state court's revision of his sentence "sua sponte" and "[a]lmost two decades after the imposition of the original sentence" violated his due process rights. [*Id.* at 2-3.]

On November 30, 2009, the Indiana Court of Appeals dismissed Isby's appeal, finding that Isby had failed to show why his appeal should not be dismissed because it was a successive petition. [Dkt. 19-9.] Isby sought transfer to the Indiana Supreme Court, and on March 10, 2010, the Indiana Supreme Court vacated the Indiana Court of Appeals' decision dismissing the appeal and remanded the case to the state trial court "with instructions to amend the abstract of judgment to reflect the original thirty-year sentence on Count II" because it found "no basis for increasing the sentence on Count II." [Dkt. 19-11 at 3.] As to the consecutive nature of the sentence, the Indiana Supreme Court stated "the Court, however, rejects Isby's argument that the trial court improperly increased the 1992 sentence by ordering it be served consecutive to the sentence Isby was serving when he committed the 1992 offenses. In orally pronouncing the 1992 sentence, the trial court ordered it be served consecutive to the earlier sentence. Thus, the

6

reference to consecutive sentences in the [Second Abstract] did not result in a longer sentence. The Court perceives no error in the sentence." [*Id.*]

As directed by the Indiana Supreme Court, the state court issued a Third Amended Abstract of Judgment ("Third Abstract") on March 18, 2010, which provided for the originally imposed 30 year sentence for Count II. [Dkt. 1-5.][2] Isby again pursued post-conviction relief, but his motions for relief from judgment and a motion to correct errors were denied. [Dkt. 19-1 at 13.] He then appealed to the Indiana Court of Appeals, [dkt. 19-12 at 2], which again ordered him to show cause why his petition was not a prohibited successive post-conviction petition, [dkt. 19-13]. Isby responded to the Show Cause Order, [dkt. 19-15], and the Indiana Court of Appeals dismissed Isby's appeal on October 25, 2010, [dkt. 19-16]. On March 3, 2011, the Indiana Supreme Court denied Isby's petition to transfer. [Dkt. 19-12 at 4.]

Isby filed his habeas petition in this Court on December 13, 2011, arguing that the amendment of his sentence to make the sentence consecutive took place after expiration of the time limit for doing so, and violates: (1) the ex post facto clause; (2) the due process clause; and (3) the double jeopardy clause. [Dkt. 1 at 7-13.]

## II.
### STANDARD OF REVIEW

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a). "Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston*,

---

[2] The state court docket indicates that the Third Abstract was docketed on April 8, 2010 and mailed to Isby on May 6, 2010. [Dkt. 19-1 at 13.]

240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1)); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

In addition to the substantive standard noted above, "[o]ut of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). Before a federal court can entertain a petition for habeas corpus, a state prisoner must exhaust his state remedies by presenting his claims fully and fairly to the state courts. *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (citing 28 U.S.C. 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997)). "A state prisoner ... may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied*. When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.*, the errors worked to the petitioner's 'actual and substantial disadvantage,')…; or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence…)." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (internal citations omitted). "Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted).

Additionally, when there has already been a decision on the merits in a federal habeas action, to obtain another round of federal collateral review a petitioner requires permission from the Seventh Circuit Court of Appeals under 28 U.S.C. § 2244(b). *See Potts v. United States*, 210 F.3d 770 (7th Cir. 2000). This statute, § 2244(b)(3), "creates a 'gatekeeping' mechanism for the consideration of second or successive [habeas] applications in the district court." *Felker v. Turpin*, 518 U.S. 651, 657 (1996); *see Benefiel v. Davis*, 403 F.3d 825, 827 (7th Cir. 2005); *United States v. Lloyd*, 398 F.3d 978, 980 (7th Cir. 2005). This statute "'is an allocation of subject-matter jurisdiction to the court of appeals.'" *In re Page*, 170 F.3d 659, 661 (7th Cir. 1999) (*quoting Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996)). "'A district court must dismiss a second or successive petition…unless the court of appeals has given approval for the filing.'" *Id.*

## III.
### DISCUSSION

The Respondent argues that the Court should deny Isby's Petition because: (1) the Court lacks jurisdiction since Isby's Petition is an unauthorized successive petition for writ of habeas corpus, [dkt. 19 at 6-8]; and (2) even if the Petition is not successive, it is barred by procedural default because Isby did not challenge the consecutive nature of his sentence in his first set of appeals directly after the initial sentencing, [*id.* at 8-9]. The Respondent also notes that the trial court judge stated at the sentencing hearing that the sentence was consecutive, and that the trial

court was correct in making the sentences consecutive because it is required under Indiana law. [*Id.* at 8.] The Court will address each argument in turn.

### A.  Jurisdiction and Successive Petitions

The Respondent argues that Isby's Petition is successive to his First Petition because the First Petition already challenged his sentence and the Third Abstract is not a judgment, and is not new.  [Dkt. 19 at 7.]  Rather, the Respondent claims that the trial court judge informed Isby that Indiana law required him to order his sentences consecutive to the sentences he was already serving, so Isby was required to challenge the consecutive nature of his sentence during his first round of appeals.  [*Id.* at 7-8.]  Accordingly, the Respondent asserts that the Petition is successive to the First Petition and the Court does not have jurisdiction to consider it.  [*Id.* at 8.]

Isby responds that the Third Abstract is a new judgment, so his Petition – which relates to that new judgment – is not successive.  [Dkt. 30 at 14-15.]  He also argues that his Petition is not barred by procedural default because the claims he asserts for violation of the due process, ex post facto, and double jeopardy clauses were not available to him at the time of the First Petition since they only arose when the trial court issued the Second Abstract in 2009.  [*Id.* at 15-16.]

"Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."  *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998).  If a petitioner has already pursued a habeas petition and a federal court has decided it on the merits, the court lacks subject-matter jurisdiction to hear a successive petition absent permission from the Court of Appeals.  *In re Page*, 170 F.3d at 661.

The question before the Court is whether Isby's Petition is successive to the First Petition in 2003 and, consequently, barred.  The Respondent's argument is premised on the assertion that Isby could have, and should have, raised the issues he raises in the Petition in his first set of state

10

court post-conviction proceedings and in the First Petition.  But this mischaracterizes Isby's arguments here.  In this Petition, Isby specifically complains regarding the fact that the trial court amended the First Abstract so long after his initial sentence to specify that the sentence was consecutive.  He does not complain regarding the actual fact that the sentence is consecutive, or argue that it should not have been consecutive at the outset.  Rather, he focuses solely on the timing of the amendment of the First Abstract.

Because the Second Abstract was not issued until April 2009 – over five and a half years after Isby filed the First Petition in September 2003 – he could not have raised that issue in the First Petition.  Accordingly, the Petition is not successive to the First Petition and the Court has jurisdiction over this matter.

## B.  Procedural Default

In addition to arguing that Isby should have raised the consecutive issue in his First Petition and is barred from doing so now, the Respondent also argues that even if he had raised it in the First Petition, it would be barred because he did not exhaust his state remedies in his first round of appeals.  [*Id.* at 8-9.]  This argument is a non-starter.  The Court has already found that Isby was not required to raise – and, indeed, could not have raised – the constitutional claims he raises here in the First Petition.  Accordingly, what Isby did or did not raise in his first round of state court post-conviction remedies and appeals is irrelevant.  Because the currently pending Petition is not successive to the First Petition, the relevant inquiry for procedural default is whether Isby raised the constitutional challenges in his state court appeals after the Second Abstract was issued.  He did, and the Respondent does not argue otherwise.

### C.  The Merits of the Petition

The Respondent states that the trial court was correct, and was "bound by law" under Indiana Code § 35-50-1-2(d), when it imposed Isby's sentence as consecutive to the sentence he was already serving at the time of his conviction.  [Dkt. 19 at 8.]  As noted above, Isby does not address whether his sentence should have been consecutive in the first instance under § 35-50-1-2(d), but focuses only on the timing of the trial court's clarification through the Second Abstract. He asserts that this delayed amendment: (1) violated the ex post facto clause, [dkt. 30 at 16-24]; (2) violated his due process rights, [*id.* at 24-30]; and (3) violated the double jeopardy clause, [*id.* at 30-42].

As noted, Indiana Code § 35-50-1-2(d) provided then and still provides:

If, after being arrested for one (1) crime, a person commits another crime:

> (2) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime;

*          *          *

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

Therefore, under the clear language of § 35-50-1-2(d), it was mandatory that Isby's sentences for crimes committed while in prison run consecutively to the sentence he was serving when he committed them, and correcting the abstract to reflect the sentence as consecutive did not violate Isby's constitutional rights.  *See Armant v. LeBlanc*, 2010 U.S. Dist. LEXIS 40602, *19-20 (E.D. La. 2010) (amendment of sentence to specify parole eligibility date was not an alteration to original sentence and was the exact sentence originally imposed, so did not violate petitioner's due process rights).  Had the trial court instead specified that the sentence run

concurrently with the sentence Isby was already serving, the sentence would have violated Indiana law.

As for the timing of the Second Abstract, the Court finds that the amendment was merely a correction to the First Abstract, and not contradictory to it in any way.  Indeed, the trial court judge specifically mentioned that any sentence would be consecutive during the sentencing hearing, stating that he did not have any discretion to sentence Isby otherwise.  [*See* dkt. 19-4 at 3-4 ("I'm required to link your sentence consecutive.  I don't think it's discretionary when you, when you commit an offense in the Department of Correction it has to be a consecutive sentence").]  Isby did not object, understandably, because the trial judge's statement was a correct statement of the law.  And, significantly, the DOC could have run the sentence consecutively absent clarification from the trial court through the Second Abstract, because the First Abstract did not specify otherwise and because it was required to do so under Indiana law.

Additionally, the Court finds that this clarification did not violate the ex post facto clause, Isby's due process rights, or the double jeopardy clause.  First, the ex post facto clause bars penal statutes which, by retroactive application, increase punishment for a crime that has already been committed.  *See Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990).  But the claim here does not challenge the sentencing statute which was in effect at the time of the original sentence, and the statute in question was not applied retroactively.  Moreover, the Second Abstract did not increase Isby's sentence.  It merely clarified that the sentence was required by law to run consecutive – as it had been from the very beginning.

Second, Isby's due process rights were not violated because the sentence was consecutive – as required by Indiana law – from the day he was initially sentenced.  The clarification did not change the original sentence in any substantive way, and the trial court could make that

clarification at any time.  *See, e.g.,* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment…."); *Ramos v. United States*, 3 Fed. Appx. 543, 545 (7th Cir. 2001) (district court can correct clerical or transcriptional errors where there is an inconsistency between the sentencing transcript and the judgment, "the sentence pronounced from the bench controls," and such a correction does not constitute a due process violation).  And, to the extent Isby bases his due process claim on the fact that the trial court judge did not hold a re-sentencing hearing with him present in connection with the Second Abstract, that argument fails because there is no such requirement.  *Ramos*, 3 Fed. Appx. at 546 (entry which "merely corrected a clerical error and conformed the [Judgment] to the orally pronounced sentence" was not a "'critical stage' of [defendant's] criminal proceeding during which his presence was required" and correction without a hearing did not violate defendant's due process rights).

Finally, the Second Abstract does not constitute double jeopardy.  The double jeopardy clause consists of three separate constitutional protections: "[i]t protects against a second prosecution for the same offense after acquittal[; i]t protects against a second prosecution for the same offense after conviction[; a]nd it protects against multiple punishments for the same offense."  *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  There has not been an acquittal or second prosecution here and, as discussed above, the Second Abstract did not impose any new sentencing requirements on Isby, and merely clarified the First Abstract.  The double jeopardy clause simply has no

application here.[3]

While the Court finds that Isby's Petition is not successive to the First Petition, and that he did not procedurally default on his claims, it also finds that his ex post facto, due process, and double jeopardy arguments fail on the merits and, accordingly, his Petition is denied.

### IV.
### CONCLUSION

The Court has carefully reviewed the state record in light of Isby's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.  "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 131 S. Ct. at 786; *see also Cavazos v. Smith*, 132 S. Ct. 2, 7-8 (2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of

---

[3] Isby has created an odd procedural posture for this case.  He states that his Petition relates to the April 2010 Third Abstract, but really it relates to the Second Abstract and the state courts' decisions finding that the Second Abstract properly clarified that his sentence was consecutive. The Third Abstract was solely the result of the Indiana Supreme Court's remand of the case to change the Count II sentence back to 30 years.  When that remand took place and the trial court issued the Third Abstract, Isby had exhausted his state court remedies on the consecutive issue and his time for filing a habeas petition on that issue began to run again.  Instead, he started state court appeals proceedings anew – which were all rejected as successive.  He did not file the pending habeas petition until December 2011, which was outside of the one-year limitations period provided in 28 U.S.C. § 2244(d).  The Respondent does not raise this issue, but the Court is permitted (though not obligated) to raise timeliness *sua sponte* absent an express waiver.  *See, e.g., Day v. McDonough*, 547 U.S. 198, 210 (2006) ("we hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition") (emphasis in original).  The Court can likely also dismiss the Petition as untimely but, as discussed above, it fails on the merits in any event.

deference to state courts in § 2254(d) habeas cases"). Isby's habeas petition does not present such a situation and that petition is therefore **DENIED**. Isby's request for a hearing on the petition is also denied, as the expanded record and the briefs provided a sufficient record on which the Court could make its ruling. Judgment consistent with this Entry shall now issue.

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Isby has failed to show that reasonable jurists would find "the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court, therefore, denies a certificate of appealability.

08/29/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

James Blaine Martin
OFFICE OF THE ATTORNEY GENERAL
james.martin@atg.in.gov

**Distribution via U.S. Mail:**

AARON E. ISBY
892219
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838